IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-03064-M

| | | |
|---|---|---|
| ENRIQUE RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| COUNTY OF PENDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On March 3, 2021, Enrique Ray ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. See [D.E. 1, 5, 11]. Plaintiff subsequently filed a corrected complaint [D.E. 4], a motion for injunctive relief, Mot. [D.E. 9], a motion to appoint counsel, Mot. [D.E. 13], a self-styled "supplemental complaint" [D.E. 15], and a motion to preserve video evidence, Mot [D.E. 17].

First, the court construes plaintiff's "supplemental complaint," [D.E. 15], as a motion to amend the complaint, see United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003) (noting that courts "classify pro se pleadings from prisoners according to their contents, without regard to their captions."), and summarily GRANTS this motion, see Fed. R. Civ. P. 15(a)(1).

Next, the court turns to plaintiff's motion seeking appointment of counsel, Mot. [D.E. 13]. No right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989); Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968) (finding no constitutional right to appointment of counsel in civil cases and appointment is within court's

discretion). "Exceptional circumstances" for appointment of counsel in *pro se* civil cases arise when a plaintiff lacks capacity to represent himself; this is a determination by the court that "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163.

In support of his motion to appoint counsel, plaintiff asserts that he is unable to afford counsel, he lacks legal knowledge, he has limited access to legal materials, the issues in this case are complex, and his imprisonment greatly limits his ability to litigate. Mot. [D.E. 13] at 1–2.

Contrary to plaintiff's assertions, this case is not complex. Further, because his filings indicate that he possesses the ability to proceed *pro se*, plaintiff fails to demonstrate the requisite extraordinary circumstances. Thus, the court DENIES the motion to appoint counsel [D.E. 13].

The court now conducts its preliminary review of the complaint, as amended, pursuant to 28 U.S.C. § 1915A and, for the following reasons, allows the action to proceed in part.

### Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)

2

(quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

### Plaintiff's Filings:

In his initial complaint, plaintiff alleges that:

(3) unknown name white male prison members of hate group "Bond for Glory" and the defendants [Pender County, Officer Demas ("Demas"), Officer Edge ("Edge")], in a conspiracy, pulled sleeping plaintiff from his (5) foot (5) inches high top bunk, down hard on the concrete floor and began punching and kicking plaintiff[,] a black male[,] as the (3) prisoners yelled die nigger die repeatedly before observing Officer Demas waited about 60 seconds, before commanding the (3) to stop, but observing Officer Edge remained silent, during the attack, and plaintiff did receive (6) stitches above left eye and slight vision lost and back pain [sic].

Id. at 1–2.

For relief, plaintiff seeks an "award of $100,000 in compensatory damages for court cost attorney fees hospital bill for (6) stiches and pain and suffering" as well as "$700,000 in [punitive] damages for civil rights violation [sic]." Id. at 2.

3

In his corrected complaint, plaintiff generally alleges he was the victim of a hate crime at Pender C.I. on November 2, 2020,[1] again names as defendants Pender County, Demas, and Edge, and now also names as defendants the three unknown inmate attackers. See Corrected Compl. [D.E. 4] at 3–5. Plaintiff specifically alleges: "(3) white male inmates Bond for Glory, pulled me off my bunk while sleeping, and landed hard on cement floor, then began punching and kicking me, while yelling die nigger repeatedly as officers Demas and Edge watched from desk about (1) minute [sic]." Id. at 5. As to what happened, plaintiff writes: "An attack that was violent as (2) officers watched for (1) minute and then Officer Demas yelled stop [sic]." Id. at 6. As to his injury, plaintiff alleges he suffered the following: "(6) stiches above left eye, with vision slightly impaired, lower back pain and sleepless nights [sic]." Id. at 7. For relief, plaintiff asks the court to grant "compensatory damages for court costs, attorney fees and medical expenses for present and future treatment" and "punitive damages for hate crime act $700,000 [sic]." Id. at 8.

In his motion seeking a preliminary injunction, plaintiff requests that the "U.S. Department of Justice [ ] serve its full investigations process on his § 1983 complaint[.]" Mot. [D.E. 9] at 1. Plaintiff reiterates that he was the victim of a hate crime because three white inmates yelled racist invective during the violent attack while Demas and Edge, two white officers, watched. Id. at 1–2 (citing N.C. Gen. Stat. § 14-3(c), the Eighth Amendment, and the Equal Protection and Due Process clauses). Plaintiff further asserts that the attack "included conspiracy" because Demas and Edge allowed the attackers "about 60 seconds to [inflict] pain upon [plaintiff]." Id. at 2.

In his self-styled "supplemental complaint," plaintiff alleges that, after he was discharged from New Hanover Hospital on November 10, 2020, he was placed in segregated custody. See

---

[1] The court notes that plaintiff sometimes states the incident occurred on November 2, 2020, see [D.E. 4] at 5–6, but elsewhere indicates that the incident occurred on November 9, 2020, see [D.E. 4-1] at 1; Mot. [D.E. 17] at 1.

4

Mot. [D.E. 15] at 2. Plaintiff asserts that he does not "know why [he] was placed in the hole" because he was never written up, he was the victim of the attack, and he did not fight back. Id. Plaintiff alleges that, while in segregated custody, he was harassed by the three inmates that had attacked him and he caught COVID-19. Id. at 3. Plaintiff further alleges that, after his release from segregated custody, he was "harassed by officers on a daily basis." Id. Plaintiff asserts that officers "did locker searches [and] destroyed [his] property," he "started getting write ups," and that he is now in close custody whereas, before the attack, he was in medium custody. Id. Plaintiff alleges that, due to complications to his left eye, he now wears glasses. Id. Plaintiff further states that he suffers from "PTSD, fright, nervousness, anxiety, [and] apprehension" and that he still has "twinges of pain in [his] back, neck severe headache, [and] nightmares." Id.

Discussion:

As an initial matter, neither Pender County nor the three inmates are amenable to suit under section 1983. See West, 487 U.S. at 48; Philips, 572 F.3d at 180.

Next, the court considers the claim that Demas and Edge violated the Eighth Amendment when they watched without intervening as the three inmates attacked plaintiff for 60 seconds. See [D.E. 1] at 1–2; [D.E. 4] at 5–6; [D.E. 9] at 1–2. This claim is not clearly frivolous. See Farmer v. Brennan, 511 U.S. 825, 832–34 (1994); Brown v. N. Carolina Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010). Accordingly, the court ALLOWS TO PROCEED this aspect of the complaint.

Next, the court turns to plaintiff's claim that Demas and Edge engaged in a conspiracy with the three inmates. See Compl. [D.E. 1] at 1; Mot. [D.E. 9] at 2. In order to establish a civil conspiracy in violation of § 1983, plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted

5

in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Conclusory conspiracy allegations do not demonstrate the "meeting of the minds" element and therefore fail to state a claim. See id.

Succinctly stated, plaintiff's bald, conclusory allegations are mere "labels and conclusions" that fail to state a colorable civil conspiracy claim. Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To the extent that plaintiff instead alleges violations of his due process rights, see Mot. [D.E. 9] at 1–2, Mot. [D.E. 15] at 2–3, in order to state a claim under the Due Process Clause of the Fourteenth Amendment, plaintiff must demonstrate that government action deprived him of life, liberty, or property. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). When examining procedural due process claims, a court "first asks whether there exists a liberty or property interest which has been interfered with by the State." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). If so, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Id. Although states may create a federally cognizable liberty interest, see id., a prisoner is only entitled to procedural due process protections for prison disciplinary proceedings that impose a punishment that alters "the duration of [an inmate's] sentence," or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 487 (1995).

Here, plaintiff fails to plausibly allege that his segregation placement altered his sentence length or imposed an "atypical and significant hardship." Cf. Sandin, 515 U.S. at 484; see Iqbal,

6

556 U.S. at 678; Twombly, 550 U.S. at 555; Riccio v. Cty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution.").

To the extent that plaintiff instead alleges violations of his constitutional rights pursuant to being held in segregation or changes to his custody classification, see Mot. [D.E. 15] at 2, these claims likewise fail. See Meachum v. Fano, 427 U.S. 215, 225 (1976) (noting custody classification in a state prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts."); Adams, 40 F.3d at 75 ("Prisoners have no right under the Constitution to be held in either protective or minimum custody."); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (noting changes to "prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges . . . are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively."); O'Bar v. Pinion, 953 F.2d 74, 82–84 (4th Cir. 1991) ("[A]dministrative segregation and reclassification . . . are . . . discretionary administrative acts in which an inmate obtains no liberty interest under North Carolina law.").

To the extent plaintiff instead alleges that his placement in segregation violated the Eighth Amendment, he also fails to state a cognizable claim. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (noting only "extreme deprivations" – *i.e.*, a "serious or significant physical or

7

emotional injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective component of Eighth Amendment conditions-of-confinement claims).

Next, to the extent plaintiff alleges that locker searches after his release from segregated custody violated his Fourth or Fourteenth Amendment rights, this claim also fails. See Hudson v. Palmer, 468 U.S. 517, 527–28 (1984) (holding inmates have no reasonable expectation of privacy in cells); Block v. Rutherford, 468 U.S. 576, 589–91 (1984) (deferring to prison security interests allowing "shakedown" cell searches and noting such searches do not violate Fourteenth Amendment due process rights); cf. Incumaa v. Stirling, 791 F.3d 517, 531 (4th Cir. 2015) (describing "near-daily cavity and strip searches" as "severe").

To the extent plaintiff instead alleges that his property was destroyed during these searches, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533; see Mora v. City of Gaithersburg, 519 F.3d 216, 231 (4th Cir. 2008). Here, because plaintiff has a meaningful postdeprivation remedy available in state court, see Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983), plaintiff again fails to state a cognizable due process claim.

To the extent plaintiff instead contends that guards retaliated against him after his release from segregation, see Mot. [D.E. 15] at 3, these "write ups" and locker searches do not themselves constitute constitutional violations, and plaintiff's bare allegations also fail to plausibly connect the allegedly retaliatory behavior to his exercise of a constitutionally protected right. See Twombly, 550 U.S. at 555; Giarratano, 521 F.3d at 304 n.5; Adams, 40 F.3d at 75.

8

Turning to plaintiff's equal protection claims, see Mot. [D.E. 9] at 1–2, the Fourteenth Amendment's Equal Protection Clause provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § I. This clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, plaintiff's bald, vague assertions fail to show that he was treated differently from similarly situated individuals and are too threadbare to state a viable equal protection claim. Cf. id.; see Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; see also Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997) (finding inmates are not a suspect class under equal-protection analysis).

Next, plaintiff's motion for injunctive relief presumptively was mooted by his intervening transfer from Pender C.I. to Maury C.I. See N.C. Dep't of Pub. Safety, Offender Pub. Info. https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0679423&searchOffenderId=0679423&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (noting plaintiff's transfer to Maury C.I. on or about June 23, 2021) (last visited Jan. 19, 2022); see also Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." (citation omitted)); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (finding prisoner's request for injunctive relief mooted by intervening transfer). Because there is no indication that plaintiff will return to Pender C.I., and because plaintiff has not

9

shown a "real and immediate threat" of repetition of the alleged violations at Pender C.I., the court also does not discern that any exception to the mootness doctrine applies. Cf. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Williams v. Ozmint, 716 F.3d 801, 809–10 (4th Cir. 2013).

Alternatively, even if plaintiff's motion seeking a preliminary injunction were not moot, plaintiff fails to show likelihood of success on the merits, extraordinary circumstances, and clear entitlement to the requested relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (noting the Supreme Court has rejected the standard allowing a "plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (quotation omitted)), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); see also Taylor v. Freeman, 34 F.3d 266, 268–69 (4th Cir. 1994) (noting courts only grant injunctive relief involving the management of prisons in extraordinary circumstances).

To the extent this motion for injunctive relief requests that the United States Department of Justice investigate the purported violations of his civil rights, see Mot. [D.E. 9] at 1, plaintiff lacks the right to commence an investigation or to bring criminal charges, see, e.g., Kunzer v. Magill, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) ("Private citizens have no constitutional or

10

other right to a criminal investigation, nor any judicially-cognizable interest in the prosecution or non-prosecution of another." (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973))).

Accordingly, the court DENIES this motion for a preliminary injunction [D.E. 9] either as moot or because plaintiff fails to demonstrate that he is entitled to the requested relief.

Finally, in support of the motion to preserve evidence, plaintiff contends that video of the incident on November 9, 2020, will show that officers gave false reports. Mot. [D.E. 17] at 1. The court GRANTS IN PART this motion to the extent that directing defendants to preserve all available video evidence involving the relevant incident satisfies plaintiff's request.

## Conclusion:

In sum, the court: GRANTS the motion to amend [D.E. 15]; DENIES the motion for a preliminary injunction [D.E. 9]; DENIES the motion to appoint counsel [D.E. 13]; GRANTS IN PART the motion to preserve video evidence [D.E. 17] and DIRECTS defendants to preserve all available video evidence involving the relevant incident; DISMISSES as defendants the "County of Pender" and the "(3) unknown" inmates; ALLOWS TO PROCEED plaintiff's Eighth Amendment claim against Demas and Edge; DISMISSES the remainder of plaintiff's claims, as discussed above; and DIRECTS the clerk to continue management of the case under the court's Standing Order 14-SO-02. If service under this standing order fails, the court further DIRECTS the United States Marshals Service to make service pursuant to 28 U.S.C. § 1915(d).

SO ORDERED. This 24th day of January 2022.

RICHARD E. MYERS II
Chief United States District Judge

11